IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Lakeithon M. Hall, #289440 )<br>                                           )<br>                      Petitioner,  )<br>                                           )<br>         v.                              )<br>                                           )<br>McKither Bodison, Warden    )<br>of Lieber Correctional Institution, )<br>                                           )<br>                      Respondent. )<br>                                           ) | Civil Action No.8:08-2468-HMH-BHH<br><br>**REPORT AND RECOMMENDATION<br>OF MAGISTRATE JUDGE** |

The petitioner, a state prisoner, seeks relief pursuant to Title 28, United States Code, Section 2254. This matter is before the Court on the respondent's motion for summary judgment. (Dkt. # 15.)

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review posttrial petitions for relief and submit findings and recommendations to the District Court.

The petitioner brought this habeas action on July 7, 2008.[1] On December 8, 2008, the respondent moved for summary judgment. By order filed December 9, 2008, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On February 11, 2009, the petitioner filed a response opposing the respondent's summary judgment motion.

---

[1] This filing date reflects that the envelope containing the petition was date stamped as having been received on July 7, 2008, at the Lieber Correctional Institution mailroom. (Pet. Attach. # 4.) *Houston v. Lack*, 487 U.S. 266 (1988)(holding prisoner's pleading is considered filed when filed with prison authorities for forwarding to the district court).

## PROCEDURAL HISTORY

The petitioner is currently incarcerated in the Lieber Correctional Institution. In February 2001, the petitioner was indicted in Lancaster County for two counts of murder, attempted armed robbery, and possession of a firearm during the commission of a violent crime. The petitioner was also subsequently indicted in Chester County for first degree burglary, armed robbery, and kidnaping. These charges were unrelated to the Lancaster County charges. Attorney Ross A. Burton represented the petitioner on the charges. On December 6, 2002, the petitioner pled guilty as charged to two counts of murder, attempted armed robbery, and possession of a weapon during a violent crime. The Chester County indictments were nol prosed pursuant to the plea agreement. (App. 67-68.) On December 9, 2002, the Honorable Paul E. Short, Jr., sentenced the petitioner to thirty-eight (38) years for each murder, twenty (20) years for the attempted armed robbery, and five (5) years for the possession of a weapon charge. These sentences were ordered to run concurrently. The petitioner did not appeal his guilty pleas or sentences.

On October 14, 2003, the petitioner filed an application for post-conviction relief ("PCR") raising the following grounds:

> 1) Ineffective assistance of counsel
>
>> (a) Counsel was ineffective inasmuch as he failed to adequately investigate my case.
>>
>> (b) Prior to my plea, counsel was ineffective inasmuch he failed to investigate and interview crucial witnesses.
>>
>> (c) Prior to my plea, counsel was ineffective inasmuch he failed to adequately investigate exculpatory evidence of forensic reports to build possible defense to my case.
>
> 2) Involuntary Guilty Plea- My guilty plea was involuntarily, unknowingly, and unintelligently entered inasmuch counsel pre-trial investigation of my case was inadequate, unreasonable, and prejudice me into pleading guilty.

On March 1, 2006, a hearing was held before the Honorable John C. Hayes, III. On March 2, 2006, the Judge Hayes denied the petitioner's application for post-conviction relief with prejudice.

The petitioner appealed from the denial PCR raising only one issue on appeal: whether "trial counsel erred in failing to investigate into and develop a third-party guilt defense in the case?" The case was transferred to the South Carolina Court of Appeals by Order of the South Carolina Supreme Court. On May 22, 2008, the South Carolina Court of Appeals denied the Petition for Writ of Certiorari. The Remittitur was filed on June 9, 2008.

In this habeas action, the petitioner raises the following grounds for relief, quoted verbatim:

> **Ground One:** Petitioner was denied his constitutionally guaranteed right to the effective assistance of counsel.
>
> **Issue A:** Was petitioner denied his constitutionally guaranteed right to the effective assistance of counsel when counsel failed to adequately investigate Petitioner's case?
>
> **Issue B:** Was petitioner denied his constitutionally guaranteed right to the effective assistance of counsel when counsel failed to investigate and interview crucial witnesses?
>
> **Issue C:** Was petitioner guilty plea involuntary, unknowing and unintelligently entered when counsel failed to do any reasonable pretrial investigation and in failing to do so prejudiced petitioner into pleading guilty?
>
> **Issue D:** Was petitioner denied his constitutionally guaranteed right to the effective assistance of trial counsel when counsel failed to investigate into and develop a plausible third party guilt defense ?

(Pet. at 6; Supp. to Pet. at 3.)

## **APPLICABLE LAW**

**Summary Judgment Standard**

Rule 56 of the Federal Rule of Civil Procedure states as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252.

4

Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

**HABEAS STANDARD OF REVIEW**

Since the petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir.1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or
>
> 2. resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2).

Federal habeas corpus relief may not be granted unless the relevant state-court adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings," 28 U.S.C.A. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 410.

**EXHAUSTION AND PROCEDURAL BAR**

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts.

5

The two theories rely on the same rationale. The general rule is that a petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

    A.  Exhaustion

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions. Applications for writs of habeas corpus are governed by 28 U.S.C. § 2254 , which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States." The statute states in part:

> (b) (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that
>
>> (A) the applicant has exhausted the remedies available in the courts of the State; or
>>
>> (B) (I) there is either an absence of available State corrective process; or
>>
>> (ii) circumstances exist that render such process, ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction, it is clear that § 2254 requires a petitioner to present any claim he has to the

state courts before he can proceed on the claim in this court. The United States Supreme Court has consistently enforced the exhaustion requirement.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal. SCAR 207; *Blakeley v. Rabon*, 221 S.E.2d 767 (S.C. 1976). The second avenue of relief is by filing an application for PCR. S.C. Code Ann. § 17-27-10 et seq. A PCR applicant is also required to state all of his grounds for relief in his application. S.C. Code Ann. § 17-27-90. Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim. If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. *Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977); *Richardson v. Turner*, 716 F.2d 1059 (4th Cir. 1983).

B. Procedural bypass

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts. If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, *Smith v. Murray*, 477 U.S. 527,

7

533 (1986). Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, (i.e., direct appeal, appeal from PCR denial) and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote . . . not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case. *Reed v. Ross*, 468 U.S. 1, 10-11 (1984).

Stated simply, if a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

C. Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner before this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met

8

and the rules of procedural bar apply. *Matthews v. Evatt*, 105 F.3d 907 (4th Cir. 1997)(citing *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991); *Teague v. Lane*, 489 U.S. 288,297-98 (1989); and *George v. Angelone*, 100 F.3d 353,363 (4th Cir. 1996).

### D. Cause and Actual Prejudice

The requirement of exhaustion is not jurisdictional and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. *Granberry v. Greer*, 481 U.S. 129, 131 (1987). In order to have such claims considered, a petitioner must show sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray*, 477 U.S. 478. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.* Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. He is required to prove that specific errors infected the trial and were of constitutional dimensions. *United States v. Frady*, 456 U.S. 152 (1982).

## **DISCUSSION**

### **Procedurally Barred Claims**

The respondent contends that all the grounds that the petitioner are procedurally barred. The respondent contends that the only issue raised on appeal from the denial of post-conviction relief was whether: "Trial counsel erred in failing to investigate into and develop a third party guilt defense in the case." (Pet. for Writ of Cert. at 2). He then argues

that because the PCR court did not rule on this issue and the petitioner did not file a Rule 59 motion, this issue is also procedurally barred.

As set out above, issues which are procedurally defaulted in state court cannot be considered on habeas review. *Coleman v. Thompson*, 501 U.S. 722 (1991)(failure to properly appeal issue to state appellate court results in procedural bar on habeas review). The respondent argues that the issue which the petitioner raised in his appeal of the denial of PCR was not specifically addressed in the PCR court's order and the petitioner did not file a Rule 59(e) motion to alter or amend the judgment. The respondent contends that in his PCR application, the petitioner alleged a failure to investigate but not "a failure to investigate into and develop a third party guilt defense."   Further, the respondent argues that the PCR court did not address this specific allegation, but rather addressed the issue of whether trial counsel was ineffective for failing to investigate and interview witnesses. The petitioner presented three witnesses at his PCR hearing who testified they saw a group of boys running from the victim's car after the gunshot and the petitioner was not one of the boys. As the respondent argues, in the order, the PCR court trial judge does not specifically mention these three witnesses or the alleged failure of trial counsel to investigate a third party's guilt defense. However, the PCR court did hold that trial counsel was not ineffective for failing to properly investigate and interview witnesses.  (App. 95.)  Accordingly, the undersigned declines to find this issue is procedurally barred and will address the merits of this issue.

The other issues raised in this habeas petition, however, are procedurally barred. When a state prisoner has defaulted his claims in state court, habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman,* 501 U.S. at 750.  The

petitioner has not shown cause and prejudice as to these claims, or that he is actually innocent of the crimes for which he was sentenced.

Ineffective assistance of counsel claims may be asserted in limited circumstances where the petitioner has entered a plea of guilty. A guilty plea generally precludes the petitioner from challenging defects in the process which occurred prior to the plea. He "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within he must demonstrate that the advice was not within the range of competence demanded of attorneys in criminal cases. *McMann v. Richardson,* 397 U.S. 759, 771 (1970); *Tollett v. Henderson,* 411 U.S. 258, 267 (1973). When such a claim is raised, the voluntariness issue is subsumed within the claim of effectiveness of the attorney's assistance. *Hill v. Lockhart,* 474 U.S. 52, 56 (1985).

In order to prevail on a claim of ineffective assistance of counsel pertaining to a guilty plea, a petitioner must show that his lawyer's performance was incompetent, i.e., the first prong of the *Strickland* test. Under this prong, counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland,* 466 U.S. at 691. The prejudice prong of the *Strickland* test is modified and the petitioner must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill,* 474 U.S. at 59. "This is an objective inquiry, and dependent on the likely outcome of a trial had the defendant not pleaded guilty." *Meyer v. Branker*, 506 F.3d 358, 369 (4th Cir. 2007). If, however, there exists no reasonable probability that a possible defense would have succeeded at trial, the alleged error of failing to disclose or pursue it cannot be prejudicial. *Savino v. Murray,* 82 F.3d 593, 599 (4th 1996) (*citing Hill*, 474 U.S. at 59).

An attorney has a duty to make a reasonable factual and legal investigation to develop appropriate defenses. *Sneed v. Smith,* 670 F.2d 1348 (4th Cir. 1982). The

11

reasonableness of the investigation is evaluated by the totality of the circumstances facing the attorney at the time. *Bunch v. Thompson,* 949 F.2d 1354 (4th Cir. 1991). The Courts recognize limits to investigation based on time, resources, and relevance and conclude that "*Strickland* does not impose a constitutional requirement that counsel uncover every scrap of evidence that could conceivably help their client." *Green v. French,* 143 F.3d 865, 892 (4th Cir. 1998). A decision not to investigate a particular avenue of defense is assessed by the same standard of "reasonableness in all the circumstances" by which an attorney's performance is measured in other areas. *Strickland,* 466 U.S. 690-91. A petitioner asserting a claim of ineffectiveness of counsel in failing to investigate must make a showing that the failure was prejudicial.

On November 20, 2000, the victim, Sheela Jury, who was 37 weeks pregnant, and her husband Thomas Jury were riding in their car in Lancaster County with Mr. Jury driving. Mr. Jury stated that he had attempted to take a short cut through a bad part of town and decided to turn around. When he did, he stated his path was blocked by a vehicle. The Jury's car was surrounded by six to eight men. Mr. Jury stated the petitioner approached the car and attempted to rob the victims with a handgun. He stated that the petitioner fired a shot into the car which struck the victim Mrs. Jury in the shoulder. She died from blood loss that day and her baby, who had been delivered by an emergency c-section, died several days later.

Co-defendant, Calvin Peay, told police that he had handed the petitioner the gun immediately before the murders. He stated that the petitioner had fired the gun into the victim's car. Peay later tried to recant that he actually handed the gun to the petitioner. However, police did not accept or believe this later statement. Mr. Jury also positively identified the petitioner from a photographic line-up as the person who murdered his wife and baby.

Brandon Cunningham and Haywood Watts both eventually gave statements to police in which they admitted to being present at the time of the murders and witnessing the petitioner shoot the victim. The petitioner admitted at his guilty plea that he was guilty of the murders, attempted armed robbery, and possession of a weapon during a violent crime and apologized to Mr. Jury.

At the PCR hearing, three witnesses, Takeisha Cunningham, Tara Evans, and Crystal Duncan, testified that they witnessed the shooting but did not see the petitioner among the group of six to eight men who had surrounded the victim's car. (App. 29-50.) Cunningham and Evans had given statements to the police.

In her statement, Cunningham initially told police she saw six boys around the victim's car. She told police she could only identify four of the six boys. At the police station she said she believed the other two were Rico Stevens and Haywood Watts. The police officer involved in this subsequent identification noted on his report that Cunningham saw these two individuals, Stevens and Watts, while she was there at the station to be interviewed.

In her statement, Evans stated that she was outside of Crystal Duncan's apartment sitting in a car. She stated that she was not looking at the victim's car when the shooting occurred and only turned around after the shooting occurred and after she asked Duncan what that noise was and Duncan said the noise was a gunshot. Evans told police she saw six to eight boys running. They looked like teenagers. She stated she knew some of them, but not by name, and could identify approximately four or more of them if she saw them again.

At the PCR hearing, trial counsel testified that he reviewed discovery, including the statements from Cunningham and Evans, autopsy reports, and gunshot residue tests. (App. 66.) He testified that he also spoke to Mr. Jury who had positively identified the petitioner.

13

(App. 6.)[2]  Trial counsel stated that he also spoke to the petitioner's co-defendant Peay who had told police the petitioner had given him the gun after the murders and how it was hidden after the murders.  (App. 11; 68.)  Trial counsel testified that he attempted to speak with the other co-defendants, but he was rebuffed by their attorneys.

Trial counsel testified at the PCR hearing that he was not sure that he would have called the three witnesses who testified at the PCR hearing had the petitioner gone to trial.  (App. 55.)  Trial counsel testified that these witnesses' testimony was suspect as each had criminal records with which they could be were impeached.  Further, each admitted that they were friends with the petitioner or with his family and had been for some time.  Furthermore, he noted that they were some distance from the actual shooting itself and were not as close as the other four witnesses who had identified the petitioner as the shooter.  Additionally, two of these witnesses testified they were not even looking at the victim's car at the time of the shooting and only looked up after hearing the shot.  Trial counsel testified that it is "hard to imagine that the jury would weigh their testimony more heavily than they would weigh [Mr.] Jury's" positive identification of the petitioner.  (App. 63.)

Furthermore, at his guilty plea, the petitioner professed his actual guilt and apologized to the family.  In evaluating a post-guilty plea claim of ineffective assistance, statements made previously under oath during the original plea hearing are binding on the petitioner absent "clear and convincing evidence to the contrary." *Fields v. Attorney General of Md.*, 956 F.2d 1290, 1297-99 (4th Cir. 1995) (*citing Blackledge v. Allison,* 431 U.S. 63,

---

[2]In his supplemental petition, the petitioner states that trial counsel stated that "'no one' completely and independently implicated Petitioner as a suspect, victim, or defendant." (Pet. Supp. at 11.)  However, what trial counsel actually testified to was that "no person that was completely independent [] implicated [the petitioner], meaning they weren't a victim and they weren't a suspect or a defendant."  The petitioner uses this statement to argue that "no one implicated [him]".  (*Id.* at 14.) (*See also id* at 12-14.)  Notwithstanding the other obvious flaws with this argument, certainly the victim's identification of the petitioner is strong evidence which cannot be ignored or discounted simply because he was not completely independent of the crime.

14

74-75 (1977)).  "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland,* 466 U.S. at 689 (internal quotation marks and citation omitted); *see also Fields v. Attorney General of Maryland,* 956 F.2d 1290, 1297-99 (4th Cir. 1992).

Based on the foregoing, the undersigned concludes that the record supports the state PCR court's holding that trial counsel was not ineffective and it is not contrary to clearly established federal law nor is it an unreasonable determination of the facts in light of the evidence in the state court proceedings. The petitioner has failed to meet his burden to show error.

## **CONCLUSION**

Wherefore, it is RECOMMENDED that the Respondent's Motion for Summary Judgment (Dkt. # 15) be GRANTED; and the habeas petition DISMISSED with prejudice.

IT IS SO RECOMMENDED.

                                                           s/Bruce Howe Hendricks
                                                           United States Magistrate Judge

June 11, 2009
Greenville, South Carolina

**The petitioner's attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 10768
Greenville, South Carolina 29603

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).